UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KIM GORHAM a/k/a KIM DIMAGGIO,
individually and on behalf of all
others similarly situated,

Plaintiff,

-against-                                    JURY DEMAND

BANK OF AMERICA, NA,

Defendant,                    Index No

-and against-

BAC Home Loans Servicing, LP,

Defendant.

-and against-

COUNTRYWIDE HOME LOANS, INC.,

Defendant.
_____

**CLASS ACTION COMPLAINT**

**PRELIMINARY STATEMENT**

1.  Plaintiff brings this class action on behalf of herself and on behalf of all other

    similarly situated, and seeks redress under the Real Estate Settlement Procedures

    Act (RESPA) (12 USC 2605) and 18 USC 1961 et. seq , The Racketeer

    Influenced and Corrupt Organization Act (Civil RICO).

2. Defendants engage in the nationwide destruction of records related to mortgage servicing, which makes them unable to provide consumers with copies of vital documents allegedly sent consumers related to the servicing of their mortgage escrow in direct contravention of 24 CFR 3500.17(l).

3. Defendants routinely destroy or intentionally or negligently fail to maintain records related to mortgage servicing despite an absolute statutory duty to maintain such records for a period of five years.

4. When a consumer exercises their right to obtain copies of escrow documents pursuant to 24 CFR 3500.17(l), instead of producing the document for the consumer, Defendants "recreate" the documents in an illegal and artificial manner.

5. That is, Defendants recreate those records when it fits them. They engage in the ultimate of "self dealing" relative to the servicing of escrow records.

6. Defendants choose to claim the records are unavailable or destroyed, when they have erred in the servicing of a mortgage, and production of the mortgage servicing records would show to a consumer the mortgage was negligently serviced.

**The Parties**

7. Plaintiff is a natural person residing at 6 Berkley Rd, Glenville, NY 12302. Her original mortgage was with Countrywide Home loans, Inc., or divisions thereof, and a division, partner or affiliate or successor serviced said mortgage.

8. Defendant Bank of America NA is a successor in interest to Countrywide Home

Loans and its affiliates.

9. Defendant BAC Home Loans Servicing, LP, is partner of Bank of America, NA. Both Bank of America and BAC Home Loans Servicing service mortgage loans they have acquired from Countrywide (**Exhibit "A").** Both are mortgage servicers of federal mortgages.

10. Defendant COUNTYWIDE HOME LOANS, INC., is a foreign corporation with a place of business located at 4500 PARK GRANADA, CALABASAS, CALIFORNIA, 91302

11. Jurisdiction is proper as the case involves a Federal Question.

### Statement of Facts

12. This case involves a legally blind consumer and her repeated, repeated attempts to obtain a copy of a 2007 escrow statement and escrow analysis Defendants allegedly sent her in the course of servicing her mortgage.

13. She has requested it—repeatedly—yet Defendants are refusing to provide her with a copy.

14. Every "mortgage servicer" has a statutory duty to send a consumer an annual escrow analysis and an annual escrow statement, advising that consumer of their escrow, monthly payment, and how it was calculated based on taxes. The duty and federal requirements, along with sample HUD authorized are found in 12 USC 2605(e) and 24 CFR 3500.17(l)

**Plaintiff's Qualified Written Requests**

15. On March 19th, 2009, Plaintiff sent a Qualified Written Request (pursuant to borrower inquiries, 12 USC 2605(e) and 24 CFR 3500.17) to Defendants, seeking specific information regarding her mortgage account for 6 Berkley Rd, Glenville, NY. A copy of the March 19th, 2009 Qualified Written Request is attached hereto as **Exhibit B**. A copy of Defendants "acknowledgement" is attached as **Exhibit "E".**

16. The mortgage was held by Countrywide Home Loans. Countrywide Home Loans was taken over by Bank of America, and Bank of America and BAC Home Loans Servicing, LP.

17. Additional Qualified Written Requests were sent to Defendants demanding explanations of her escrow and the anaylsis (*see also*, **Exhibit C),** and seeking a copy of her April, 2007 escrow statement and 2007 escrow analysis.

18. Defendants allegedly sent Plaintiff an escrow statement in February 2007 or April, 2007. She claims she never received it. She wants a copy of it.

**The Duty of A Servicer to Provide an Annual Escrow Statement**

**The Statutory Construction of 24 CFR 3500.17**

19**. A. <u>24 CFR 3500.17</u> states:**

(i) ***Annual escrow account statements***. For each escrow account, a servicer *shall* submit an annual escrow account statement to the borrower within 30 days of the completion of the escrow account computation year. The servicer *shall* also submit to the borrower the previous year's projection or initial escrow account statement. The servicer

shall conduct an escrow account analysis before submitting an annual escrow account statement to the borrower.

### Contents of the Escrow Statement

20. <u>24 CFR 3500.17</u> also mandates the contents of the annual escrow statement:

*(1)  Contents of Annual Escrow Account Statement. The annual escrow account statement shall provide an account history, reflecting the activity in the escrow account during the escrow account computation year, and a projection of the activity in the account for the next year. In preparing the statement, the servicer may assume scheduled payments and disbursements will be made for the final 2 months of the escrow account computation year. The annual escrow account statement must include, at a minimum, the following (the items in paragraphs (i)(1)(i) through (i)(1)(iv) must be clearly itemized):*

*(i)  The amount of the borrower's current monthly mortgage payment and the portion of the monthly payment going into the escrow account;*

*(ii)  The amount of the past year's monthly mortgage payment and the portion of the monthly payment that went into the escrow account;*

*(iii)  The total amount paid into the escrow account during the past computation year;*

*(iv)  The total amount paid out of the escrow account during the same period for taxes, insurance premiums, and other charges (as separately identified);*

*(v)  The balance in the escrow account at the end of the period;*

*(vi)  An explanation of how any surplus is being handled by the servicer;*

*(vii)  An explanation of how any shortage or deficiency is to be paid by the borrower; and*

*(viii)  If applicable, the reason(s) why the estimated low monthly balance was not reached, as indicated by noting differences between the most recent account history and last year's projection. HUD Public Guidance Documents entitled "Annual Escrow Account Disclosure Statement--Format" and "Annual Escrow Account Disclosure Statement--Example" set forth an acceptable format and methodology for conveying this information.*

**Format of Prior Escrow Statements Sent Plaintiff (Exhibit I)**

21. Plaintiff did receive an escrow statement in 2006, and a copy of that escrow statement is attached as **Exhibit I**. Exhibit I appears to be a HUD compliant statement and or analysis, and walks the consumer through her escrow analysis.

22. Plaintiff denies receiving either an escrow statement or an escrow analysis in 2007 similar to "I" and she now has a very simple request: To obtain a copy the alleged escrow analysis done in 2007, and the Statement sent to her in 2007, in a format similar to the statement she always received (similar to **Exhibit I**).

**Statutory Duty  for Escrow Analysis**

23. In addition to requesting a copy of an escrow statement, Plaintiff has also repeatedly sought a copy of an escrow analysis allegedly performed in February, 2007.

24. 24 CFR 3500.17 also mandates the requirements for an escrow analysis.

25. Specifically, 24 CFR 3500.17 states:

*3)  Subsequent escrow account analyses. For each escrow account, the servicer must conduct an escrow account analysis at the completion of the escrow account computation year to determine the borrower's monthly escrow account payments for the next computation year, subject to the limitations of paragraph (c)(1)(ii) of this section. In conducting the escrow account analysis, the servicer must estimate the disbursement amounts according to paragraph (c)(7) of this section. Pursuant to paragraph (k) of this section, the servicer must use a date on or before the deadline to avoid a penalty as the disbursement date for the escrow item and comply with any other requirements of paragraph (k) of this section. The servicer must use the escrow account analysis to determine whether a surplus, shortage, or deficiency exists, and must make any adjustments to the account pursuant to paragraph (f) of this section. Upon completing an escrow account analysis, the servicer must prepare and submit an annual escrow account statement to the borrower, as set forth in paragraph (i) of this section.*

**A Servicer Such as Defendants Have an Absolute Statutory Duty**

**To Maintain Servicing Records for Five Years**

26. <u>24 CFR 3500.17(l)</u> states, in part, that servicer such as Defendants indeed must keep records of a consumers escrow servicing for a five year period of time.

27. <u>24 CFR 3500.17(l)</u> reads:

   (l) *System of recordkeeping.* (1) Each servicer shall keep records, which may involve electronic storage, microfiche storage, or any method of computerized storage, so long as the information is easily retrievable, reflecting the servicer's handling of each borrower's escrow account. The servicer's records shall include, but not be limited to, the payment of amounts into and from the escrow account and **the submission of initial and annual escrow account statements to the borrower**. (Emphasis added)

   (2) The servicer responsible for servicing the borrower's escrow account shall maintain the records for that account for a period of at least five years after the servicer last serviced the escrow account.

**A Consumer Has an Absolute Statutory Right to Request Those Records**

28. A consumer such as the Plaintiff has an absolute right to request a copy of the records relative to the servicing of their mortgage.

29. 24 CR 3500.17(l)(4) states: "Borrowers may seek information contained in the servicer's records by complying with the provisions set forth in 12 U.S.C. 2605(e) and §3500.21(f). "

30.  The provisions of 12 USC 2605(e) allow a consumer to send a Qualified Written Request to a servicer and seek records, and allow a consumer a private cause of action if a mortgage servicer such as Defendants fail to comply with 12 USC 2605(e). 12 USC 2605 (e) mandates that the servicer must "acknowledge" the receipt of the Qualified Written Request within 20 days, and answer the consumer's request within sixty (60)

days.

31. As stated, Plaintiff has sent numerous qualified written requests seeking a copy of 2007 escrow statement and escrow analysis, but has yet to receive it (Exhibits B and C).

**Defendants' Response to Plaintiff's**

**Qualified Written Request Seeking a Copy of**

**Her Escrow Analysis and Statement Fails to Comply with**

**Both 24 CFR 3500.17 and 12 USC 2605e**

32. With a system of record keeping required for five years, and a statutory duty to provide records to a consumer relating to the servicing of an escrow account, obtaining a copy of both her escrow statement and analysis has thus far proved impossible for the Plaintiff.

33. Defendants—through counsel—sent Plaintiff a 100% illegible printing of a computer screen. A copy of the email from counsel, and a copy of what Defendants claim is Plaintiff's 2007 Escrow statement and Escrow analysis is attached hereto as Exhibit "H". Defendants know Plaintiff is legally blind, have repeatedly admitted they knew she was legally blind, and in apparent "thumb our nose" at her and at Court proceedings, send her an illegible copy of an escrow analysis and statement (H)

34. Exhibit H is illegible, and certainly not in any HUD approved format or in a form substantially similar to the other Escrow servicing papers sent Plaintiff, such as that in Exhibit I.

35. Exhibit H was first sent by the manager of the customer service department, a Mr.

Kyle Heisen.

36. It was then sent by Defendant's counsel, Kenneth Rudd.

37. Mr. Rudd even followed up with another email confirming that Exhibit H is, indeed, Plaintiff's Escrow statement and Analysis.

38. Exhibit H is illegible.

39. Exhibit H fails to comply with the statutory mandates of 24 CFR 3500.17.

40. Exhibit H is not the standard format sent to consumers in the regular and ordinary course of business.

## Defendants Destruction of Records on a Class of Consumers

41. Despite the statutory obligations to maintain records for a period of five years, Defendants have admitted and conceded they do not keep copies of consumers' records. (Webster's Dictionary defines "records" as**:** 'an authentic official copy of a document deposited with a legally designated officer d**:** the official copy of the papers used in a law case.')

42. Plaintiff's repeated requests to obtain a copy of her escrow statement and escrow analysis have been repeatedly thwarted.

43. In **Exhibit F**, Defendants tell Plaintiff "Copies of the statements issued to you are not retained and cannot be produced."

44. **Exhibit F** also states "Copies of the escrow analyses in the forms that were originally sent to you are also not retained."

45. That is, Defendants are unable to comply with a simple Qualified Written Request for copies of escrow analyses and statements, because they don't have them, despite an absolute statutory duty to retain these records for five years per 24 CFR 3500.17.

**A Pattern and Practice of Evidence Destruction**

46. The failure to retain proper records is widespread. In June, 2007, Plaintiff sent Defendants a letter requesting an accounting of her escrow (Exhibit D). It appears Exhibit "D" had a postcard placed over the body of the letter. The official explanation? Destroyed  by a letter opener (Exhibit "G")

47. Defendants actively destroy records so they don't have to provide consumers with any copies of records.

48.  When a consumer is confused about their escrow, and want a clear and concise statement in a format that complies with 24 CFR 3500.17, they are unable to obtain one. The impact on consumers is detrimental, especially since the escrow part of the mortgage is what throws consumers off. On a fixed rate mortgage, the Principle and Interest is the same every month. An escrow addition to the primary Principle and Interest may fluctuate when the escrow analysis is completed. That was the legislative intent when Congress enacted 24 CFR 3500.17—to prevent "shock" to a consumer.

49. By destroying records and not retaining them, Defendants "recreate" records so they can mold and form the data to look any way they want it to. (See, for example, In re Hill, District of Pennsylvania, where Defendants were found guilty of "recreating letters.")

50. Since the Defendants don't keep copies of the original documents, the records sought must be recreated.

51. The problem for the consumer is detrimental: Defendants and their representatives are failing to recreate the data properly, in a format authorized by law and in a manner legible to consumers.

52. The records sent consumers is simply either incorrect or incomplete.

53. By failing to keep copies of the original records, Defendants are unable to properly reply to a Qualified Written Request when a consumer requests said records and information (See also, Exhibit J).

54. The 'recreation' of letters is a self-serving, self dealing method of covering up Defendants own failure to keep records.

55. In the absence of such wide-spread horrific record keeping, Defendants fudge their responses to Qualified Written Requests in an attempt to self-deal and ward off law suits such as the instant one.

56. The recreated letters are inferior and insufficient as to the original documents, because they are incomplete and fail to comply with the full requirements of 24 CFR 3500.17. The letters are tailored to each situation, so Defendants can cover up misrepresentations made to consumers.

57. Defendants "recreate" the information and carve the data and records and mold the information to meet their own needs for self dealing.

58. Rather than produce a copy, for example, of an escrow statement or escrow analysis that complies with HUD regulations and 24 CFR 3500.17, Defendants keep the HUD compliant forms covered up to cover up their own fraud and misrepresentations.

59. By producing a copy of a statement or analysis that is HUD compliant, a typical consumer will realize Defendants erred in the handling of the escrow servicing. To cover

up the servicing mistakes and fraud and misrepresentation in the servicing of a consumer

escrow, Defendants "recreate" letters, insert the data as they see fit, and fail to produce

the entire data in a HUD compliant form. This way, a consumer is left in the dark about

the fraud that occurred to them.

## CLASS ALLEGATIONS

60. This action is brought by the Plaintiff individually and on behalf of all others

similarly situated, whose loans were serviced by Defendants within three years of the

date of filing, and

   a)  who mailed Defendants a Qualified Written Request pursuant to 12 USC

      2605(e)  requesting copies of records relating to the servicing of their

      mortgages escrow accounts; and

   b)  Plaintiff did not receive a copy of the records requested;

      or

   c)  Defendant failed to properly provide borrowers the information contained in the

      servicers records pursuant to a request made by 12 USC 2605(e) in a HUD

      compliant form.

      **There is a sub class that**

   d) The Qualified Written Request was not properly acknowledged.

61. Plaintiff seeks certification under the federal Rules of Civil Procedure 23(a)

and 23(b)(1),(2) and (3).

62.  The members of the class are so numerous that joinder of all members is impracticable. It is estimated there are in excess of 10,000 putative class members.

63.  Plaintiff's claims are typical of those of the class. All are based on the same legal and factual theories. Among the questions of law and fact common to the class are:

    a.  Whether Defendants violated 12 USC 2605(e) by failing to retain and produce records related to the servicing of consumer's mortgages when requested pursuant to 12 USC 2605(e);

    b.  Whether Defendants violated 12 USC 2605(e) by failing to properly respond to a consumer's Qualified Written Request for records;

    c.  Whether Defendants violate 12 USC 2605(e) by failing to properly acknowledge a Qualified Written Request.

64.  Plaintiff's claims are based on documents, standardized servicing practices, and evidence that was used by the defendant on a nationwide basis.

65.  Defendants controlled and implemented the challenged practices on a uniform basis.

66.  Plaintiff will fairly and adequately represent the interests of the class members. Neither plaintiff nor her counsel have any interests which might cause them not to pursue this action vigorously.

67.  Plaintiff's claim is typical of the claims of the members of the class, as Plaintiff and all other putative members sustained harm arising out of Defendant's common course of wrongful conduct. Plaintiffs are greatly

aggrieved at the damages and unfair and deceptive treatment they suffered at Defendant's hands.

68. A class action is superior for the fair and efficient adjudication of this controversy. Most class members do not even realize they have a claim. A class action is therefore essential to prevent a failure of justice.

69. Plaintiffs have suffered the same wrongs generally. Plaintiff is fully committed to fairly, adequately and rigorously representing and protecting the interests of the class.

70.  Plaintiff's attorney is competent in class litigation and in FDCPA litigation. Counsel has successfully litigated three classes to certification, and provides CLE lectures through a variety of groups.

71. The prosecution of separate actions by members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatable standards of conduct within the meaning of 23 (b)(1)(A).

72. Defendants have acted or refused to act on grounds applicable to the class, making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole within the meaning of 23(b)(2).

73. Questions of law or facts common to members of the class predominate over any questions affecting only individual members within the meaning of the rule 23(b)(3).

74. A class action is superior to other available methods for the fair and efficient adjudication of this controversy within the meaning of Rule 23(b)(3) because

joinder of all members is impracticable, and pursuing class members' claims on an individual basis would be both prohibitively expensive for most class members and inefficient from a standpoint of the judicial system. Plaintiff knows of no serious difficulty likely to be encountered in the management of this action that would preclude its maintenance as a class. In addition, Defendants service approximately 9 million accounts.

**Count I**

**Failure to Properly Produce Records**

**in Violation of 12 USC 2605(e)**

75. Plaintiff repeats and realleges the allegations in Paragraphs 1 thru 74 above.

76. Defendants have a duty to retain records relative to the servicing of an escrow account, pursuant to 24 CFR 3500.17(l).

77. Defendants have a statutory duty to produce those records when a consumer requests them, pursuant to 12 USC 2605 and 24 CFR 3500.17.

78. Defendants fail to produce those records to the consumer in proper form or in easily convertible format that complies with HUD regulations in violation of 12 USC 2605 and 24 CFR 3500.17.

79. Plaintiff requested a copy of her escrow statement and Defendants were unable to produce it in a HUD compliant and legible form, in violation of 12 USC 2605 and 24 CFR 3500.17.

80. Plaintiff requested a copy of her escrow analysis and Defendants were unable to produce it in a HUD compliant and legible form, in violation of 12 USC 2605 and 24 CFR 3500.17.

81. Plaintiff and members of the class are entitled to relief under RESPA including damages and a declaratory judgment that Defendants conduct violates RESPA. Each Defendant is vicariously liable for the acts of the other.

WHEREFORE, as to Count I, Plaintiff prays for relief as follows:

a.  Compensatory damages;

b.  Punitive damages;

c.  Statutory damages;

d.  Costs and attorney fees;

e.  a right to a  trial by jury;

f.  class certification

g.  such other and further relief as to this court seems just and proper.

**Count II**

**Failure to Properly Acknowledge a**

**Qualified Written Request in Violation of 12 USC 2605**

**Subclass I**

82. Plaintiff repeats and realleges the allegations in Paragraphs 1 thru 81 above, as if fully stated herein.

83. 12 USC 2605(e) states that, upon receiving a Qualified Written Request from

a consumer, a mortgage servicer must "acknowledge" the Qualified Written Request.

84. One such acknowledgement allegedly sent Plaintiff is attached hereto as Exhibit E.

85. Exhibit K is not a proper acknowledgment to a Qualified Written Request. It makes no reference whatsoever to which communication, or even identifies a Qualified Written Request.

86. As Exhibit "K" fails to specifically identify which correspondence it's referring to, the acknowledgment fails to comply with the mandates of 12 USC 2605(e).

87. Plaintiff and members of the class are entitled to relief under RESPA including damages and a declaratory judgment that Defendants conduct violates RESPA. Each Defendant is vicariously liable for the acts of the other.

WHEREFORE, as to Count II, Plaintiff prays for relief as follows:

a. Compensatory damages;

b. Punitive damages;

c. Statutory damages;

d. Costs and attorney fees;

e. a right to a  trial by jury;

f. class certification

g. such other and further relief as to this court seems just and proper.

## Count III

## 18 USC 1962c

88. Plaintiff repeats and realleges the allegations in Paragraphs 1 thru 87 above, as if fully stated herein.


### The Person

89. Countrywide Home Loans is a person pursuant to 18 USC 1961c, as it failed to maintain proper data and records pursuant to the mandates of 24 CFR 3500.17.

90. Upon information and belief, the servicing of mortgages currently also done by BAC Home Loans.

91.  Bank of America acquired Countrywide Home Loans, but continues to operate it as a shell corporation, in an attempt to cover up the fraud herein.

Bank of America and BAC Home Loans are an association-in-fact, and are an enterprise.

92. Bank of America and BAC Home Loans knew or should have known that Countrywide Home Loans failed to keep records, and were recreating letters.

93. Despite the cloud that has hung over Countrywide, Bank of America has continued to keep many of the same employees in service, knowing they may be violating the law.

94. Defendants, and in each of them, are affiliated and associations in fact and are vicariously liable for the other.

Mail Fraud, Self Dealing, Predicate Acts and a Pattern

95. The Defendants engaged in a pattern of mail fraud, and deny consumers the intangible right to honest services through the use of the US Mails.

96. When a consumer requests a record or document related to the servicing of their mortgage, Defendants have an absolute duty to send a copy of the requested data and documents.

97. Defendants "recreate" letters and data and documents, and claim the original data and copies are unavailable for the purpose of self-dealing. That is, when Defendants defrauded a consumer in the servicing of a consumer's escrow, rather than provide the consumer with the actual servicing document that may reflect the fraud, Defendants "recreate" the documents and hope to "slide one by" the otherwise least sophisticated consumer.

98. They have repeatedly lost or destroyed or failed to produce records from the Plaintiff.

99. Defendants destroyed a document sent to them by Plaintiff, in an apparent "letter opener: (Exhibits "D" is Plaintiff's letter and Exhibit "G" indicates it was apparently destroyed by a letter opener.).

100. In Exhibit D, Plaintiff requests an accounting of her escrow. In Exhibit G, Defendants tell Plaintiff they destroyed her request. In Exhibit E, Defendants, in a mockery, tell Plaintiff they can't comply with Plaintiff's request because her request—the one Defendants themselves destroyed—is illegible.

101. But the destruction of documents does not stop there: Defendants also state they keep no records or documents relative to the servicing of Plaintif's escrow, including a copy of her prior escrow analysis and escrow statement (Exhibit "F")

102. defendants don't keep records (see also In re Hill) despite a statutory duty to do so, and "recreate" them in an attempt to conceal fraudulent escrow transaction.

Continuity

103. Defendants have stated they don't keep records. Since they don't keep records, from here on in, they are unable to comply with a consumer's request for a record.

104. Every single time a consumer requests a record, Defendants are going to be in the position to recreate data to their own liking and tailoring.

105. This is "past conduct that by its nature projects into the future with a threat of repetition."

Damages

106. The destruction of documents and the recreating of letters is self dealing effectuated through the use of the US Mails.

107. Consumers have an absolute right to information about their mortgages.

108. By failing to comply with a written request for and failure to provide accurate, HUD compliant forms and data, consumers are damaged in receiving accurate information about their mortgages.

109. Said self dealing is willful and intentional, and in reckless disregard for the truth, all of which is sent over state lines and effects interstate commerce.

110. As a direct and proximate cause of Defendants actions, Plaintiff has been damaged.

WHEREFORE, as to Count III, Plaintiff prays for relief as follows:

a. Compensatory damages;

b. Punitive damages;

c. Statutory damages;

d. Costs and attorney fees;

e. a right to a  trial by jury;

f. class certification

g. such other and further relief as to this court seems just and proper.

## Count IV

## 18 USC 1962d

## Conspiracy

111. Plaintiff repeats and realleges the allegations in Paragraphs 1 thru 110 above, as if fully stated herein.

112. Defendants, and each of them, agreed to join the conspiracy.

113. Defendants, and each of them, joined in recreating letters to cover up fraud in mortgage servicing.

114. Defendants, and each of them, agreed to commit the predicate acts.

115. Defendants, and each of them, knew their actions and the destruction of key documents related to the servicing of mortgages was a pattern of racketeering activity.

116. For example, Defendants used counsel to forward Exhibit H to consumer, as true and legible copy of her 2007 escrow statement and escrow analysis, knowing full well it was illegible.

117. Said self dealing is willful and intentional, and in reckless disregard for the

truth, all of which is sent over state lines and effects interstate commerce.

118. As a direct and proximate cause of Defendants actions, Plaintiff has been

damaged.

WHEREFORE, as to Count IV, Plaintiff prays for relief as follows:

a. Compensatory damages;

b. Punitive damages;

c. Statutory damages;

d. Costs and attorney fees;

e. a right to a  trial by jury;

f. class certification

g. such other and further relief as to this court seems just and proper.


## Count V

## Gross Negligence

119. Plaintiff repeats and realleges the allegations in paragraphs 1 thru 118 as if fully
set forth herein.

120. Defendants, and each of them, or liable for the acts of the other.

121. Defendants, and each of them, owed a duty to the Plaintiff, and a class of
Plaintiffs.

122.  Defendants, and each of them, breached the duty owed to the Plaintiff.

123.  Defendants, and each of them directly or proximately caused the damages herein.

124.  Defendants, and each of them, were grossly negligent for the actions herein described. Defendants' misrepresentations and actions and destruction of records and documents and failure to keep records and documents herein were motivated by malice and a desire to benefit themselves as herein described.

125.  Defendants, and each of them, acted willfully, maliciously, intentionally, and in reckless disregard for the facts herein described, and each are jointly and vicariously liable for the acts of the other. The actions herein described effect the public at large and effect interstate commerce.

126. As a direct and proximate result of Defendants' actions, Plaintiff was damaged.

WHEREFORE, as to Count V, plaintiff prays for

      a.  Punitive damages;

      b.  Actual damages;

      c.  Compensatory damages;

      d.  Costs and Attorney fees.

   e. a right to a trial by jury;

   f. such other and further relief as to this court seems just and proper.

**Count VI**

**Breach of Implied Covenant for
Good Faith and Fair Dealing**

127. Plaintiff repeats and realleges the allegations in paragraphs 1 thru 126 as if fully set forth herein.

128. At all times herein, there was a contract between Deendants  and Plaintiff.

129. Inherent in that contract was the Covenant for Good Faith and Fair Dealing.

130. Defendants breached that Covenant by failing to live up to their end of the contract, to maintain records relative to the servicing of Plaintiff's mortgage, and to produce those records upon receipt of a Qualified Written Request.

131. Defendants breached the Covenant by failing to maintain records, the data that comprises those records, and produce them upon request by a consumer.

132. Defendants breached that covenant of fair dealing by their actions herein described.

WHEREFORE, as to Count VI, plaintiff prays for

      a. Punitive damages;

      b. Actual damages;

      c. Compensatory damages;

      d. Costs and Attorney fees.

      e. a right to a trial by jury;

      f. such other and further relief as to this court seems just and proper.

### Count VII

### Negligence

133. Plaintiff repeats and realleges the allegations in paragraphs 1 thru 132 as if fully set forth herein.

134. Defendants, and each of them, or liable for the acts of the other.

135. Defendants, and each of them, owed a duty to the Plaintiffs.

136. Defendants, and each of them, breached the duty owed to the Plaintiffs.

137. Defendants, and each of them, through their actions, directly or proximately damaged Plaintiff.

138. Defendants, and each of them, were negligent for the actions herein described.

139.  Defendants, and each of them, are vicariously and jointly liable for the acts of the other.

WHEREFORE, as to Count VII, plaintiff prays for

      a.  Actual damages;

      b.  Compensatory damages;

      c.  Costs and Attorney fees.

     d. a right to a trial by jury;

    e. such other and further relief as to this court seems just and proper.

Respectfully submitted,
s/RICHARD L. DIMAGGIO
*Attorney at Law*
6 Berkley Rd
Glenville, NY  12302
(518) 265-3269
RichEsq1@verizon.net
Bar #505468